IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STEVE CARLOS CRUZ, # 321858,    *
                              *
    Plaintiff,             *
                              *
vs.                        *    CIVIL ACTION 20-00494-CG-B
                              *
JOHN BLOUGH, *et al.*,      *
                              *
    Defendants.          *

## REPORT AND RECOMMENDATION

Plaintiff Steve Carlos Cruz, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). Upon review, it is recommended that this action be **DISMISSED without prejudice**, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

### I. Proceedings.

The action is before the Court on review of Cruz's amended complaint[1] (Doc. 8). In his amended complaint, Cruz names as

---

[1] In an order dated October 14, 2020, Cruz was directed to re-file his complaint on the form required by this Court for prisoner actions under 42 U.S.C. § 1983. (Doc. 6). He was cautioned not to reference or seek to incorporate by reference his original complaint, as it would be replaced by the amended complaint. (Id.). In the form amended complaint, Cruz states that he is presently incarcerated for a November 22, 2019 "trafficking"

Defendants John Blough and James B. Johnson, Sheriff of Baldwin County, Alabama. (Id. at 10). Cruz identifies the date of the complained-of incident as approximately October 31, 2017. (Id. at 4).

According to Cruz's narrative, on or about October 31, 2017, he was at his residence on County Road 12 in Foley, Alabama, with his roommate Zach Gentry, when he was contacted by Defendant Blough. (Id. at 5). Defendant Blough asked Cruz for a ride from The Tavern, a nearby bar where he was drinking, to his boss's house in Orange Beach, Alabama. (Id.). Because Cruz and his roommate were heading out anyway, Cruz agreed to give Defendant Blough a ride. (Id.). When Cruz and his roommate arrived at The Tavern, Defendant Blough came to the vehicle with a person named Steve. (Id.). Cruz had heard "things" about Steve; thus, he did not permit Steve to enter the car, and Steve went back into the bar. (Id.). Defendant Blough got in the front passenger seat, Cruz's roommate sat in the backseat, and Cruz drove off. (Id.).

Cruz began driving toward Gulf Shores, Alabama, and Defendant Blough started to light a cigarette. (Id.). Cruz told Defendant Blough not to smoke because Cruz was a non-smoker and did not want the smell of smoke in his car. (Id.). Cruz's roommate offered

_____

conviction, for which he received a prison sentence of 120 months. (Doc. 8 at 11).

Defendant Blough his vapor pen, which Cruz permitted in his car because it did not have the smell of cigarettes. (<u>Id.</u> at 6). When Cruz stopped at Clark's Gas Station on County Road 4 to purchase gas, he began to argue with Defendant Blough, who was attempting to light another cigarette. (<u>Id.</u>). Cruz told Defendant Blough that he could get out of the car and smoke, but Defendant Blough did not do so. (<u>Id.</u>). While they continued on to Orange Beach, Defendant Blough tried yet again to light a cigarette. (<u>Id.</u>). Tired of telling Defendant Blough not to smoke, Cruz threw Defendant Blough's pack of cigarettes and cell phone out the window and told him to get out of the car. (<u>Id.</u>). Defendant Blough did not get out, so Cruz and his roommate pulled Defendant Blough out of the car and left him on the side of the road. (<u>Id.</u>).

A few days later, after leaving the Cohiba Bar, which is next to the Clark's Gas Station on County Road 4, Cruz stopped at the gas station and began filling his car with gas. (<u>Id.</u>). Officers from the Gulf Shores Police Department pulled up with their "guns locked and loaded" and told Cruz to get on the ground. (<u>Id.</u>). Cruz complied, and the officers searched him and his car. (<u>Id.</u>). They also searched Cruz's roommate and the roommate's car. (<u>Id.</u>). According to Cruz, the police released his roommate but took Cruz to jail due to warrants for kidnapping and first-degree robbery issued by the Baldwin County Sheriff's Department. (<u>Id.</u> at 6-7).

Cruz stayed in the Gulf Shores Jail overnight until the Baldwin County Sheriff took him to the Baldwin County Jail. (Id. at 7). Cruz was questioned by two detectives, who informed him that Defendant Blough had filed a report alleging that Cruz and his roommate had kidnapped him at gunpoint and robbed him of $500 and his iPhone. (Id.). Cruz told the officers that he did not do what was alleged, and that video footage from The Tavern and the gas station would verify his story. (Id.). Meanwhile, the Baldwin County Sheriff "ha[d] a story r[u]n in the news outlets about [Cruz] be[ing] arrested on charges of 'kidnapping' and 'robbery first degree' without being found guilty before a jury." (Id.).

Cruz was released from custody on a $120,000 bond. (Id.). His roommate was arrested on the same charges and was released on a $75,000 bond. (Id.). Cruz asserts that he retained Pascal Brujin as his counsel and instructed him to subpoena the video tapes from The Tavern and the gas station and the video sent to the news outlets. (Id. at 7-8).

According to Cruz, he and his roommate were never convicted and sentenced, but his bond was later revoked because of a possession charge. (Id. at 8). Cruz remained in custody at the Baldwin County Jail for three months until August 26, 2018. (Id.). Later, he learned that the grand jury had "no billed" all charges on August 1, 2018. (Id.). Thus, Cruz had been confined in jail

4

for more than twenty days after the grand jury issued a "no bill" on the charges.  (Id.).

Cruz contends that he was falsely arrested, for which he seeks compensatory damages.  (Id. at 9).  His specific claim against Defendant Blough is for filing a false affidavit, false charges, and a warrant for arrest against him, and thereby causing him to be arrested for kidnapping and robbery first-degree.  (Id. at 10). With respect to Defendant Johnson, Cruz asserts: "These Defendants held me in their county jail on false charges they never investigated and held me around (20) days after [a] no bill." (Id.).  He further asserts that he "was held as guilty by Baldwin Co[unty] Sheriff for false charges . . . for about (20) twenty more days."  (Id.).  For relief, Cruz seeks to have the kidnapping and robbery charges expunged from his record and to be paid monetary damages in an amount the Court deems fair.  (Id. at 12).

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Cruz is proceeding in forma pauperis, the Court is reviewing his amended complaint (Doc. 8) under 28 U.S.C. § 1915(e)(2)(B).  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, or the claim seeks to enforce a right that

5

clearly does not exist.  Id. at 327.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must show plausibility.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557 (last brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  Jones v. Bock, 549 U.S. 199, 215 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction, holding them to a more lenient

6

standard than those drafted by an attorney.  <u>Tannenbaum v. U.S.</u>,
148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).  However, "this
leniency does not give a court license to serve as *de facto* counsel
for a party, or to rewrite an otherwise deficient pleading in order
to sustain an action."  <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d
1165, 1168-69 (11th Cir.) (citation and quotation marks omitted),
<u>cert. denied</u>, 574 U.S. 1047 (2014).  Furthermore, a court treats
a plaintiff's factual allegations as true, but it does not assume
the truth of conclusory assertions or a recitation of a cause of
action's elements.  <u>Iqbal</u>, 556 U.S. at 681.  In addition, a *pro se*
litigant "is subject to the relevant law and rules of court,
including the Federal Rules of Civil Procedure."  <u>Moon v. Newsome</u>,
863 F.2d 835, 837 (11th Cir.), <u>cert. denied</u>, 493 U.S. 863 (1989).

**III. Analysis.**

    **A.  Defendant John Blough.**

        **1. Lack of State Action.**

"A successful section 1983 action requires a showing that the
conduct complained of (1) was committed by a person acting under
color of *state law* and (2) deprived the complainant of rights,
privileges, or immunities secured by the Constitution or laws of
the United States."  <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th
Cir. 1992) (emphasis added).  Because Cruz's amended complaint is
devoid of anything that suggests that Defendant Blough is a state

actor, the Court must determine whether Blough, as a private party,
acted under color of state law in regard to Cruz's claims. To
determine whether a private party acted under color of state law,
the United States Supreme Court uses three tests:

> (1) the public function test; (2) the state compulsion
> test; and (3) the nexus/joint action test. . . . The
> public function test limits state action to instances
> where private actors are performing functions
> "traditionally the exclusive prerogative of the state."
> . . . The state compulsion test limits state action to
> instances where the government "has coerced or at least
> significantly encouraged the action alleged to violate
> the Constitution." . . . The nexus/joint action test
> applies where "the state has so far insinuated itself
> into a position of interdependence with the [private
> party] that it was a joint participant in the
> enterprise."

Willis v. Univ. Health Servs., Inc., 993 F.2d 837, 840 (11th Cir.),
cert. denied, 510 U.S. 976 (1993); see Weaver v. James Bonding
Co., 442 F. Supp. 2d 1219, 1224-27 (S.D. Ala. 2006). "Only in
rare circumstances can a private party be viewed as a 'state actor'
for section 1983 purposes." Harvey, 949 F.2d at 1130.

In the present action, Defendant Blough is not a person who
typically acts under color of state law. That is, Defendant Blough
is a private party who brought charges against Cruz by swearing to
an affidavit. In his amended complaint, Cruz does not allege that
Defendant Blough acted under color of state law, nor do the
allegations in the amended complaint show that this defendant
performed a traditional state function, was coerced by the State,

or was a joint participant with the State in a business or enterprise. Therefore, accepting Cruz's allegations as true, the Court finds they are not sufficient to establish that Defendant Blough acted under color of state law. See <u>Corines v. Broward Cnty. Sheriff's Dep't</u>, 326 F. App'x 493, 498 (11th Cir.) (per curiam)[2] (finding that the proposed defendants, a bank, a repossession company, and their employees, did not act under state law when they allegedly provided false information to officers), <u>cert. denied</u>, 558 U.S. 1051 (2009); <u>Collins v. Womancare</u>, 878 F.2d 1145, 1155 (9th Cir.) (holding that merely complaining to the police or providing information to the police about the perpetrator of a crime does not transform a private party into a state actor), <u>cert. denied</u>, 493 U.S. 1056 (1990); <u>Manax v. McNamara</u>, 842 F.2d 808, 813 (5th Cir. 1988) ("Providing information to the state and pressing for more state action against an individual, without more, cannot suffice to make a private entity liable under section 1983 as a state actor"); <u>Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.</u>, 673 F.2d 771, 772 (5th Cir. 1982) (holding that where the police officer made his own decision to arrest, his

---

[2] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority. <u>See</u> 11th Cir. R. 36-2; <u>Henry v. Comm'r of Soc. Sec.</u>, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

reliance on a private party's information did not convert the private party into a state actor). In light of the foregoing cases, the Court concludes that Cruz's allegations do not plausibly show that Defendant Blough acted under color of state law. Thus, Cruz has failed to state a § 1983 claim upon which relief can be granted against Defendant Blough.

The undersigned further concludes, for the reasons that follow, that allowing Cruz to amend his claim against Defendant Blough for the purpose of attempting to show that Defendant Blough was acting under color of state law would be futile, because a meritorious claim cannot be stated. See Sibley v. Lando, 437 F.3d 1067, 1074 (11th Cir. 2005) (per curiam); Bank v. Pitt, 928 F.2d 1108, 1112-13 (11th Cir. 1991), abrogated on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 544-45 (11th Cir. 2002).

### 2. False Arrest and False Imprisonment Claims.

As noted *supra*, Cruz contends that he was falsely arrested and falsely imprisoned. (Doc. 8 at 9-10). "False arrest and false imprisonment overlap; the former is a species of the latter." Wallace v. Kato, 549 U.S. 384, 388 (2007) (noting that the Court's references to a false imprisonment cause of action would include the cause of action for false arrest). "[T]he tort of false imprisonment is detention *without legal process*." Id. at 389

10

(emphasis in original). "[A] false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." Id. (emphasis in original) (rejecting party's argument that "false imprisonment ended upon his release from custody"); see Shuler v. Duke, 792 F. App'x 697, 702 (11th Cir. 2019) (per curiam) (ruling that false arrest and false imprisonment claims accrued on the day of arrest because plaintiff was arrested on a warrant issued by an Alabama magistrate judge and thus was not detained without legal process).

"A cause of action under section 1983 accrues -- and the statute of limitations begins to run -- when a plaintiff knows or has reason to know (1) of his injury and (2) who has inflicted it." Id. In Alabama, the statute of limitations for a § 1983 action is two years. Jones v. Preuit & Mauldin, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc).

Cruz's original complaint is deemed to have been filed on August 30, 2020, when he signed it. (See Doc. 1 at 4); Washington v. U.S., 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam) ("Absent evidence to the contrary in the form of prison logs or other records, we will assume [petitioner's] motion was delivered to prison authorities the day he signed it."). In order for Cruz's original complaint to be timely filed, his claims must have accrued

within two years of filing this § 1983 action, i.e., after August 30, 2018.

Based on Cruz's allegations, the undersigned concludes that his claims for false imprisonment and false arrest with regard to the warrants for kidnapping and first-degree robbery are barred by the two-year statute of limitations. Cruz alleges that events giving rise to his claims occurred around October 31, 2017, when he picked up Defendant Blough from The Tavern. (Doc. 8 at 5). He then alleges that a "few days later," he was arrested on warrants for kidnapping and first-degree robbery. (Id. at 6). According to Cruz, after being in jail and talking to detectives, he was able to bond out by paying $12,000. (Id. at 7). At a later, unspecified date, Cruz's bond was revoked due to an unidentified possession charge. (Id. at 8). Eventually, Cruz was released on August 26, 2018, after being jailed for three months. (Id.). Cruz asserts that in the interim, on August 1, 2018, the grand jury had returned a "no bill" on all the charges against him. (Id.). Thus, Cruz contends that he should have been released at least twenty days earlier. (Id. at 8-9). The record reflects that Cruz signed his original complaint on August 30, 2020, and the envelope bears a postmark dated September 1, 2020. (Doc. 1 at 4-5).

Because Cruz was arrested on warrants a "few days" after October 31, 2017, the undersigned finds that the two-year statute

of limitations began to run at the time Cruz encountered the legal process, or in other words, when he was arrested on the warrants. See Shuler, 792 F. App'x at 702 (finding the issuance of a warrant constituted legal process for determining the accrual of claim); Ala. R. Crim. P. 3.1 ("[U]pon a finding of probable cause made pursuant to Rule 2.4, the judge or magistrate shall immediately cause to be issued an arrest warrant or a summons, as provided in Rule 3.2."). Cruz's complaint indicates that following his release on bond, he encountered the legal process again when his bond was revoked and he was taken back into custody at some unspecified time, but well before August 30, 2018.[3] Cruz encountered the legal process yet again when the grand jury issued a "no bill" on August 1, 2018. Thus, to the extent Cruz contends that his detention following the revocation of his bond, and his continued detention after his charges were "no-billed", also form the basis for his false arrest and false imprisonment claims, these claims accrued, and the statute began to run, prior to August 30, 2018 (which is the date two years before the original complaint was filed in this case). Accordingly, Cruz's claims for false arrest and false imprisonment against Defendant Blough are barred by the two-year statute of limitations and are due to be dismissed

---

[3] Rule 6 of the Federal Rules of Civil Procedure governs the computation of time. See Fed. R. Civ. P. 6(a)(1)(A) (providing that the day of the triggering event is excluded).

for failure to state a claim.  See Jones, 549 U.S. at 215.

**B.  Defendant Sheriff James B. Johnson.**

**1.  Mistaken Identity.**

Cruz alleges that Defendant Johnson is employed as the Sheriff of Baldwin County, Alabama.  (Doc. 8 at 10).  In Cruz's description of his claims against Defendant Johnson, there is no indication of any personal contact between him and Defendant Johnson.  Instead, Cruz's complaint contains the following references:  "These defendants held me in their County Jail"; "held as guilty by Baldwin Co[unty] Sheriff"; "charges were brought upon by John Blough and Baldwin County Sheriff's Department"; "Baldwin County Sheriff were [sic] waiting to take him back to Baldwin County"; "Baldwin County Sheriff have [sic] a story ran in the news outlets"; and warrants "that w[ere] issued by Baldwin County Sheriff Department."  (See id. at 6-7, 9-10).

The most direct references to Defendant Johnson are Cruz's assertions regarding actions allegedly taken by the "Baldwin County Sheriff" because Cruz indicates that Defendant Johnson holds that office.  (See id. at 10).  However, his assertion is not sufficient, because the Court takes judicial notice of the fact that Defendant Johnson was not the Sheriff of Baldwin County, Alabama at the time of the events giving rise to this action.

Courts can take notice of certain facts without formal proof but only where the fact in question is "one not

14

> subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).
>
> For example, the kinds of things about which courts ordinarily take judicial notice are (1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958.

Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir.) (en banc), cert. denied, 522 U.S. 1049 (1998); see Wilding v. DNC Serv. Corp., 941 F.3d 1116, 1123 (11th Cir.), cert. denied, 140 S.Ct. 2828 (2020). Accordingly, the Court takes judicial notice of the fact that Defendant Johnson was not the Sheriff of Baldwin County from 2017 to 2019.[4]

Thus, Cruz has not stated a viable claim against Defendant Johnson in this action. Furthermore, allowing Cruz to substitute another person as Defendant would not result in establishing a meritorious claim for the reasons stated below.

### 2. False Imprisonment Claim.

Cruz seeks to asserts a second false imprisonment claim based on his over-detention. Cruz alleges that the grand jury returned a "no bill" on August 1, 2018, yet he was not released from custody

---

[4] "Sheriff [Huey 'Hoss'] Mack ran for Sheriff of Baldwin County in 2006 and [was] re-elected in 2010, 2014 and 2018." https://sheriff.baldwincountyal.gov/AboutUsDetails/aboutsheriffmackdetails (last visited Apr. 2, 2021).

until August 26, 2018, some twenty-five days later. Deliberately imprisoning a person beyond a sentence without "a facially valid court order or warrant constitutes a deprivation of due process." Douthit v. Jones, 619 F.2d 527, 532 (5th Cir. 1980)[5] (recognizing that a § 1983 claim for false imprisonment must meet the elements of common law false imprisonment cause of action and must show a deprivation of rights secured by the Constitution and federal laws); see also Cannon v. Macon Cnty., 1 F.3d 1558, 1562-63 (11th Cir. 1993) (holding that the Fourteenth Amendment guarantees the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release"); White v. DeKalb Cnty., 665 F. App'x 795, 797 (11th Cir. 2016) (per curiam) (dismissing, pursuant to § 1915A(a) & (b)(1), a false imprisonment claim for being detained fifty days beyond the date of dismissal of charges); Powell v. Sheriff, Fulton Cnty. Ga., 511 F. App'x 957, 962-63 (11th Cir. 2013) (per curiam) (finding that sheriff was entitled to qualified immunity on over-detention claims for the failure to show a constitutional violation).

As stated before, the statute of limitations for a § 1983 action in Alabama is two years. Preuit, 876 F.2d at 1483. Cruz

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

asserts that he was released from his over-detention on August 26, 2018, and he filed his original complaint in this action on August 30, 2020.  (See Doc. 1 at 4).  Because this action was filed more than two years after his release, Cruz's false imprisonment claim for over-detention is barred by the two-year statute of limitations.  As a consequence, Cruz has failed to state a claim upon which relief can be granted with respect to his over-detention claim.  See Jones, 549 U.S. at 215.

### 3. Defamation Claim.

Cruz's other allegation directed to the Baldwin County Sheriff concerns the release of a news story about his arrest prior to a jury finding him guilty.  (See Doc. 8 at 7).  The Court construes the allegation as a claim for defamation.  "Defamation, by itself, is a tort actionable under the laws of most States, but [it is] not a constitutional deprivation."  Siegert v. Gilley, 500 U.S. 226, 233 (1991).  The Supreme Court "has held that injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment."  Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 2005) (citing Paul v. Davis, 424 U.S. 693, 701-02 (1976)).  The Court has explained that to hold otherwise "would make the Fourteenth Amendment a font of tort law to be superimposed upon" state tort law.  Paul, 424 U.S. at 701.

In order to invoke the protections of the Due Process Clause, a § 1983 plaintiff must "establish *more* than a mere defamation claim." Behrens, 422 F.3d at 1259 (emphasis in original) (citing Paul, 424 U.S. at 706). "Damages to a plaintiff's reputation 'are only recoverable in a section 1983 action if those damages were incurred as a result of government action significantly altering the plaintiff's constitutionally recognized legal rights.'" Rehberg v. Paulk, 611 F.3d 828, 851–52 (11th Cir. 2010) (quoting Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1438 (11th Cir. 1998)), aff'd, 566 U.S. 356 (2012).

"This doctrine is known as the 'stigma-plus' test, and requires the plaintiff to show both a valid defamation claim (the stigma) *and* 'the violation of some more tangible interest' (the plus)." Id. at 852 (emphasis in original) (citations omitted). To satisfy the stigma-plus test, a plaintiff must "show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation." Cypress, 144 F.3d at 1436.

In Paul, the plaintiff brought a § 1983 action after his mugshot and name were displayed on a police flyer to merchants purportedly identifying active shoplifters. 424 U.S. at 695-96. When the flyer was prepared, the plaintiff had been arrested for shoplifting. Id. at 695. The charge, however, was later

dismissed.  Id. at 696.  After the plaintiff was questioned by his employer and warned not to be found in this situation again, the plaintiff filed an action against the police chiefs for the stigma to his reputation, which caused him to fear entering stores and impairment of future employment opportunities.  Id. at 696-97. The United States Supreme Court found that the plaintiff's complaint appeared to state "a classical claim for defamation actionable" in the state court.  Id. at 697.  However, the Court reasoned that a person does not have a liberty or property interest in his or her reputation; therefore, the due process clause of the Fifth or Fourteenth Amendment does not attach.  Id. at 701-02. The Court stated that it would review a defamation claim only when the plaintiff's reputation was stigmatized and there was an additional injury to a previously recognized constitutional property or liberty interest flowing from the defamation.  Id. Because the Plaintiff did not assert that the defamatory publications deprived him of any liberty or property interests protected by the Due Process Clause, the Court found no constitutional violation.  Id. at 712.

The pertinent facts in Paul mirror the facts of this case, in that news of Cruz's arrest was published before there was a conviction, and after the publication, the charges were dismissed. As in Paul, Cruz's defamation claim plausibly suggests that he

suffered damage to his reputation but does not connect the alleged release of the news story about his arrest to some more tangible interest. Accordingly, Cruz has failed to state a § 1983 claim upon which relief can be granted with respect to his defamation claim.

If the Court were to grant Cruz leave to amend this claim, the amendment would be futile. Even assuming that Cruz could plausibly allege the violation of a constitutionally protected liberty or property interest based on the release of the news story, the claim would be precluded by the two-year statute of limitations, because Cruz was arrested a "few days" after October 31, 2017, and the news story was allegedly released shortly thereafter, but Cruz did not initiate this action until August 30, 2020. See Sibley, 437 F.3d at 1074; Bank, 928 F.2d at 1112-13.

## IV. Conclusion.

For the foregoing reasons, it is recommended that this action be **DISMISSED without prejudice**, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen

(14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

DONE this **2nd** day of **April, 2021**.

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE